```
            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND


W. SHEROD WILLIAMS              :
                                :
v.                              :   Civil No. WMN-05-2216
                                :
R. JAMES NICHOLSON, Secretary,  :
UNITED STATES DEPARTMENT        :
OF VETERANS AFFAIRS             :
```

## MEMORANDUM

Before the Court is a motion to dismiss or, in the alternative, for summary judgment filed by Defendant R. James Nicholson, Secretary, Department of Veterans Affairs. Paper No. 18. The motion is fully briefed. Upon review of the motion and the applicable case law, the Court determines that no hearing is necessary. Local Rule 105.6. Defendant's motion to dismiss will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff W. Sherod Williams began working as a clinical psychologist at the Veterans Affairs (VA) Readjustment Counseling Center (RCS) in Baltimore, Maryland in May 1991. On July 22, 1998, Plaintiff filed an Equal Employment Opportunity Commission (EEOC) complaint against the VA, alleging race discrimination, retaliation, and harassment. The parties eventually reached a settlement agreement on October 17, 2000, and Plaintiff agreed to dismiss the complaint. Sharon Sprecher, who began working for RCS in December 1991, became Plaintiff's supervisor in November 2002. On April 23, 2004, Plaintiff filed another formal EEOC complaint in which he alleged numerous discriminatory actions, including Sprecher's use of a racial slur during a private

meeting, her improper denial of requests for training, her withdrawal of prior leave approval, and other alleged instances of disparate treatment.  The EEOC accepted the alleged improper denial of training for investigation and dismissed the remaining claims as untimely.  On September 27, 2004, the Agency's Office of Resolution Management issued an investigative report that concluded that Plaintiff had failed to state a claim of discrimination for the denial of training.  Subsequent motions to amend the issue before the EEOC and for reconsideration were both denied.

Plaintiff subsequently filed the present action in this Court on August 12, 2005.  Plaintiff filed an Amended Complaint on November 28, 2005, Paper No. 11, alleging that Defendant, through his agents Sprecher and Phillip Hamme, Regional Director of RCS, subjected him to a hostile work environment based on his African-American race (Count I) and in reprisal for his July 22, 1998, EEOC activity (Count II), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, et seq.  Plaintiff also alleges a claim of retaliation in violation of Title VII (Count III).  Defendant now moves to dismiss or, in the alternative, for summary judgment.

**II. LEGAL STANDARD**

In deciding a motion to dismiss, a court will consider the facts stated in the complaint and the documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  In re Criimi Mae, Inc. Securities Litigation, 94 F.

2

Supp. 2d 652, 656 (D. Md. 2000).  If matters outside the pleadings are presented and not excluded, the motion must be considered under the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure.  See <u>Villeda v. Prince George's County, Md.</u>, 219 F. Supp. 2d 696, 698 (D. Md. 2002).  Resolution of the motion did not require consideration of matters outside the pleadings and, therefore, the Court will treat Defendant's motion as a motion to dismiss.[1]

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  In considering such a motion, the court accepts as true all well-pled allegations in the Complaint and construes the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  See <u>Ibarra v. United States</u>, 120 F.3d 472, 473 (4th Cir. 1997). To survive a motion to dismiss, Plaintiff "must have alleged facts that show [he is] entitled to relief on substantive causes of action." <u>In re Criimi Mae</u>, 94 F. Supp. 2d at 656.

**III. DISCUSSION**

**A. Hostile Work Environment Based on Race/Retaliation**

To establish a hostile work environment claim under Title

---

[1] The information contained within the exhibit documents pertains exclusively to Plaintiff's prior EEOC activity.

3

VII, an employee must show that: "(1) the harassment was unwelcome; (2) the harassment was based on his race or [protected activity]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive atmosphere; and (4) there is some basis for imposing liability upon the employer." Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). Defendant argues that Plaintiff has failed to satisfy the second and third prongs of the above standard. Defendant maintains that Plaintiff has not demonstrated that the alleged discriminatory acts were based on his race or prior EEOC activity or that the alleged discrimination was sufficiently severe or pervasive to sustain a hostile work environment claim.

In order to show that the alleged harassment was based on Plaintiff's race or participation in a protected activity, Plaintiff must proffer "evidence that clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between [the] negative attitude and the employment action." Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999). Defendant's knowledge of Plaintiff's prior EEOC activity, while necessary to establish causation, see Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998), is not sufficient proof that Defendant relied upon an illegitimate consideration. See Gibson v. Old Town Trolley Tours of Washington, D.C., Inc., 160 F.3d 177, 182 (4th Cir. 1998). In the present case, Plaintiff alleges that Defendant created, perpetuated, and failed to abate a hostile work environment in

4

retaliation for his 1998 EEOC complaint, but Plaintiff fails to offer evidence that his EEOC complaint triggered Defendant's actions.  See id. (finding that plaintiff failed to establish causation where he did not present any evidence that employer was motivated by plaintiff's EEOC complaint, that employer ever said anything negative about plaintiff, or that employer mentioned the EEOC complaint).  Plaintiff relies on a Third Circuit case, Farrell v. Planters Lifesavers Co., 206 F.3d 271 (3rd Cir. 2000), to support his argument that circumstantial evidence, other than timing and ongoing antagonism, can serve as the basis for a casual link.  While the Court agrees that the passage of time itself may not foreclose the establishment of causation,[2] Plaintiff has, nonetheless, failed to provide the Court with a basis to infer causation.

In addition, with the exception of one occasion in which Sprecher informed Plaintiff that she had heard that he was an "uppity N-----," the alleged discriminatory acts are race-neutral

---

[2] The Court notes that the Fourth Circuit has held that "merely the closeness in time between the filing of a discrimination charge" and an adverse employment action "is sufficient to make a prima facie case of causality." Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir. 1998). Plaintiff filed his first complaint with the EEOC on July 22, 1998, and the settlement agreement was signed in October 2000. The allegations set forth in Plaintiff's Complaint in the present case concern conduct allegedly taken by Sprecher, who became his supervisor in November 2002.  This temporal gap negates any inference of causation. See Clarke v. O'Neil, 81 Fed. Appx. 775, 776 (4th Cir. 2003) (unpublished) (finding that a nineteen month time period between the protected activity and the adverse employment action "negate[d] any inference that a causal connection exists between the two").

and bear no connection to Plaintiff's race.  While derogatory racial remarks may in some instances illustrate that harassment was based on race, the Fourth Circuit has stated that "unless the remarks upon which plaintiff relie[d] were related to the employment decision[s] in question, they cannot be evidence of discrimination."  Brinkley, 180 F.3d at 608 (quoting McCarthy v. Kemper Life Ins. Cos., 924 F.2d 683, 686 (7th Cir. 1991)).  In Brinkley, the plaintiff produced isolated statements indicating discriminatory attitudes, but failed to connect any of those incidents with her eventual demotion and termination.[3]  See id. at 608-09.  The Court in Brinkley concluded that the plaintiff failed to establish a prima facie case of discrimination and that her termination was based on factors other than a protected characteristic.  See id.  Similarly, Plaintiff in the instant case points to a single use of a racial slur, but fails to connect that incident to the alleged hostile work environment.  Consequently, Plaintiff has failed to establish that Defendant's actions were based on racial animus.

Even if Plaintiff could show that the alleged harassment was based on race or reprisal, Defendant argues that Plaintiff's claim would still fail because he cannot meet the third required

---

[3] Unlike the instant case, Brinkley involved a sexual harassment claim.  "[A]lthough racial and sexual harassment will often take different forms . . . there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment."  Spriggs v. Diamond Auto Glass, 242 F.3d 179, 186 n.9 (4th Cir. 2001) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 n.1 (1998)).

6

element of a hostile work environment claim - that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. This requirement is intended to "filter out complaints attacking the ordinary tribulations of the workplace." Wang v. Metropolitan Life Ins. Co., 334 F. Supp. 2d 853, 864 (D. Md. 2004) (internal quotations and citations omitted). "[C]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). The degree of hostility or abuse to which a plaintiff has been exposed is determined by examining the totality of the circumstances. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001) (citing Harris, 510 U.S. at 23).

Plaintiff points to several allegedly discriminatory actions in support of his hostile work environment claim.[4] For example, just weeks after her appointment to supervisor, Sprecher allegedly disrupted Plaintiff's office by arranging to have the

---

[4] Plaintiff alleges numerous discriminatory actions, most of which are simply repeated multiple times throughout the Amended Complaint. Am. Compl. ¶¶ 11a-ttt. Plaintiff's allegations amount to, at most, sporadic inconveniences that are beyond Title VII's purview. For example, Plaintiff alleges that he had to endure daily conversations with Sprecher concerning his office furniture preferences, id. ¶¶ 11c, 11s, and that he once attended a mandatory staff meeting where a former member of the building's janitorial staff attempted to solicit business as a disc jockey. Id. ¶ 11z.

7

office manager deposit assorted computer equipment and wiring on Plaintiff's desk.  Am. Compl. ¶ 11a.  On another occasion, Plaintiff claims that Sprecher denied him the opportunity to raise suggestions at staff meetings and instructed him to put his comments and concerns in writing and not to discuss them with other staff members.  Id. ¶ 11j.  Plaintiff also alleges that he was denied access to a retirement seminar when Sprecher repeatedly submitted Plaintiff's request form without complying with the application instructions provided by the VA training seminar sponsors.  Id. ¶ 11i.  In Wang, this Court found that sporadic inconveniences such as licensing delays, delays in transferring customer accounts, failure to transfer telephone calls, and other such administrative problems were not sufficiently severe or pervasive to meet the demanding test to establish a hostile environment claim.  334 F. Supp. 2d at 864.  In the instant case, as in Wang, the majority of Plaintiff's allegations are sporadic inconveniences and "involve precisely the ordinary tribulations of the workplace that are not actionable under Title VII."  Id. (internal quotations omitted).

     In some cases, courts have found racial insults to be sufficiently severe or pervasive to create an abusive working environment.  Courts have upheld hostile work environment claims based on the use of racially abusive language where the use "was repeated, continuous and prolonged despite [the plaintiff's] objections."  Nicole v. Grafton School, Inc., 181 F. Supp. 2d

8

475, 484 (D. Md. 2002) (citing Walker v. Ford Motor Co., 684 F.2d 1355, 1359 (11th Cir. 1982)).  In Spriggs, for example, the Fourth Circuit held that an employer's daily use of highly repugnant racial insults was sufficiently severe or pervasive to cause a person of ordinary sensibilities to perceive that a work atmosphere was racially hostile.  242 F.3d at 185-86.  Here, Plaintiff alleges only one instance of a racial slur which, while certainly offensive, does not rise above the level of a mere offensive utterance.  See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (citing Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir. 1971) (explaining that the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not sufficiently affect the conditions of employment to implicate Title VII)).

**B. Retaliation**

The anti-retaliation provision of Title VII forbids an employer from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceedings or investigation.  § 2000e-3(a).  In the Fourth Circuit, a plaintiff wishing to make out a prima facie case of retaliation under Title VII was required to show that: "(1) he engaged in protected activity; (2) his employer took adverse employment action against him; and (3) a sufficient causal connection existed between his protected activity and his employer's adverse employment action."  Hopkins v. Baltimore Gas

9

& Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996). In June 2006, the Supreme Court decided a circuit split as to the meaning of the second prong of the retaliation test and rejected the Fourth Circuit's approach. Burlington Northern & Santa Fe Ry. Co. v. White, No. 05-259, 2006 WL 1698953 (U.S. June 22, 2006).

In Burlington, the Supreme Court considered four different standards applied by the Courts of Appeals to interpret the "discriminate against" language of Title VII's anti-retaliation provision. The Fifth and Eighth Circuits adopted a restrictive approach, which limited actionable retaliatory conduct to ultimate employment actions "such as hiring, granting leave, discharging, promoting, and compensating." Id. at *5; see Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997); Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997). The Fourth Circuit, along with a few other circuits, applied an intermediate approach which attached liability when an employer's challenged action "result[ed] in an adverse effect on the terms, conditions, or benefits of employment." Burlington at *5; see Von Gunten v. Maryland, 243 F.3d 858, 866 (4th Cir. 2001). The Seventh and District of Columbia Circuits applied a more permissive standard, which imposed liability when an employer's actions would likely "have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, at *5 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1217-18 (D.C. Cir. 2006) (quoting Washington v. Illinois Dept. of Revenue, 420 F.3d 658, 662 (7th Cir. 2005))). Additionally, the

10

Ninth Circuit required a plaintiff to establish "adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." Burlington at *5 (quoting Ray v. Henderson, 217 F. 3d 1234, 1242-43 (9th Cir. 2000)). Resolving the circuit split, the Supreme Court adopted the more permissive standard of the Seventh and District of Columbia Circuits and concluded that Title VII's anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm. See Burlington at *10-*11.

Analyzing the second prong of the anti-retaliation standard under the more expansive Burlington interpretation, a Fourth Circuit plaintiff no longer has to show an adverse effect on the terms, conditions, or benefits of employment, see Von Gunten, 243 F.3d at 865-66, but instead must show that "the employer's challenged action would have been material to a reasonable employee, which . . . means that it would likely have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, at *5 (internal quotations and citations omitted).

Even under the more lenient Burlington standard, Plaintiff's allegations do not rise to the level of material adversity required for a retaliation claim. Whether an alleged retaliatory action is materially adverse "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Id. at *12 (internal

11

quotations and citations omitted).  In Rochon, for example, an agent of the Federal Bureau of Investigation (FBI) sued the Department of Justice alleging racial discrimination and retaliation based on his previous Title VII action against the FBI.  438 F.3d at 1213.  The District of Columbia Circuit found that the FBI's refusal to investigate a death threat made against the plaintiff by a federal prison inmate was materially adverse because "a reasonable FBI agent well might be dissuaded from engaging in activity protected by Title VII if he knew that doing so would leave him unprotected by the FBI in the face of threats against him or his family."  Id. at 1219-20.

In the instant case, Plaintiff bases his retaliation claim on the same allegations used to support his hostile work environment claim, including: the placement of computer equipment on Plaintiff's desk, delayed response to leave requests, lack of an opportunity to raise suggestions at staff meetings, and denial of access to a retirement seminar.  Am. Compl. ¶¶ 11 a, f, j, i. Plaintiff's alleged retaliatory actions fall within a class of "petty slights, minor annoyances, and simple lack of good manners" that would not deter a reasonable worker from proceeding with a claim of discrimination.  Burlington at *10.  Even Sprecher's use of a racial slur, arguably the most objectively adverse of Plaintiff's allegations, would not dissuade a reasonable worker from making or supporting a charge of discrimination.  See id. (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[J]udicial standards for [] harassment

must filter out complaints attacking . . . the sporadic use of abusive language . . . .")).  Consequently, Plaintiff's allegations cannot form the basis of a retaliation claim under Title VII.

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be granted.  A separate order will follow.

                                                                                   /s/

                                      William M. Nickerson
                                      Senior United States District Judge

Dated: August 9, 2006